# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-3858

LEELLEN CONDRY

  Plaintiff,

v.

ELIZABETH SCHOOL DISTRICT,
DAN SNOWBERGER, in his official and individual capacities,
JOHN ROGERSON, in his official and individual capacities,

  Defendants.

---

## COMPLAINT AND JURY DEMAND

---

  Plaintiff, LeEllen Condry, by and through her counsel, Mari Newman, Andy McNulty, and Madeline Leibin of NEWMAN | McNULTY, LLC, respectfully alleges for her Complaint and Jury Demand as follows:

### INTRODUCTION

  1. The Elizabeth School District ("ESD") has sought to silence the voices of Black women within the walls of its schools. It has done so through the imposition of a Book Ban prohibiting literary works that speak to the Black experience from its school library shelves.[1] But, ESD's mission of silencing Black voices did not end with the Book Ban. ESD made sure to also silence the lone Black woman employed by the district who spoke out against the Book Ban by firing LeEllen Condry just months after hiring her, and a few weeks after she denounced the Book Ban as racist.

---

[1] That Book Ban has been found unconstitutional. *See Crookshanks v. Elizabeth Sch. Dist.*, 775 F. Supp. 3d 1160 (D. Colo. 2025).

2.      ESD's actions not only violated Ms. Condry's First Amendment rights, but were also discriminatory. Had Ms. Condry not been a Black woman who spoke out against discrimination, ESD would not have terminated her.

3.      ESD's actions violate our most sacredly held rights. Ms. Condry brings this action against ESD, as well as Superintendent Dan Snowberger and Human Resources Director John Rogerson, for their violations of the First and Fourteenth Amendments to the United States Constitution; Title VII of the Civil Rights Act of 1964 ("Title VII"); 42 U.S.C. § 1981 ("Section 1981"); the Colorado Anti-Discrimination Act ("CADA"); and her statutory and common law rights under Colorado law. She seeks justice for herself, and the other voices that have been silenced by ESD.

## JURISDICTION AND VENUE

4.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

5.      Supplemental jurisdiction is based on 28 U.S.C. § 1367, because the violations of federal law alleged are substantial and the pendent causes of action derive from a common nucleus of operative facts.

6.      Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the District of Colorado.

## ADMINISTRATIVE PREREQUISITES

7.      Ms. Condry timely filed her Charges of Discrimination against ESD and Superintendent Dan Snowberger with the Equal Employment Opportunity Commission ("EEOC") and Colorado Civil Rights Division ("CCRD"). She has obtained from the EEOC and CCRD the right to sue. Thus, all administrative prerequisites have been met.

8.      Ms. Condry also timely gave notice to Defendants as required under the Colorado

Governmental Immunity Act ("CGIA").

## PARTIES

9.      Plaintiff LeEllen Condry is a resident of, and domiciled in, the State of Colorado. Ms. Condry is a Black woman and thus a member of the classes of persons protected by Title VII, Section 1981, the Fourteenth Amendment, and the CADA at all times relevant to this Complaint.

10.      Defendant ESD is a municipal government entity and as such is a proper defendant under 42 U.S.C. § 1983. ESD is an employer within the meaning of Title VII and CADA.

11.      Defendant Dan Snowberger is a citizen of the United States and resident of and domiciled in the State of Colorado. Defendant Snowberger was acting within the scope of his official duties and employment as the Superintendent for ESD, which is an employer within the meaning of Title VII and CADA, at all times relevant to this Complaint.

12.      Defendant John Rogerson is a citizen of the United States and resident of and domiciled in the State of Colorado. Defendant Rogerson was acting within the scope of his official duties and employment as the Human Resources Director for ESD, which is an employer within the meaning of Title VII and CADA, at all times relevant to this Complaint

## FACTUAL ALLEGATIONS

### ESD hired Ms. Condry based on her vast professional experience.

13.      LeEllen Condry is an educator with over thirty-five years of experience working with youth in multiple different capacities. Ms. Condry has over thirty-five years of experience working with youth in multiple, different capacities. She holds a Master's degree in Clinical Mental Health Counseling.

14.      In May of 2024, Ms. Condry applied to become an Academic Advisor/Dean of Students at Elizabeth Middle School. She interviewed and was hired in early June 2024.

15.    Ms. Condry relocated from another state to Colorado to take the job with ESD.

16.    Ms. Condry was one of the few Black employees at ESD during her tenure.

**ESD implemented a Book Ban targeting marginalized communities.**

17.    Unbeknownst to Ms. Condry, before she accepted the job with ESD, starting in the beginning of the 2024-25 school year, ESD was planning on implementing a book ban that was explicitly racist, sexist, homophobic, and transphobic. The Book Ban targeted authors and subjects that spoke to the real experiences of Black folks, women, and LGBT individuals, and that accurately told their history of oppression in this country.

18.    On August 12, 2024, the ESD Board voted to adopt a policy that developed a list of books in ESD libraries that contain so-called "sensitive" topics. According to the policy, "special attention" should be given to books that contain "racism/discrimination," "religious viewpoints," "sexual content," "graphic violence," "profanity/obscenity," "drug or excessive alcohol use," or "ideations of self-harm or mental illness."

19.    In order to develop the list of "sensitive" books, a committee formed by the ESD Board began by looking at online lists of books that had been banned or challenged elsewhere to see if those books were in ESD libraries. The committee listed added books to the "sensitive" list that were overwhelmingly written by Black and LGBTQIA+ authors, or discussed race-related and LGBTQIA+ topics, characters, and experiences. The ESD Board determined that some of the "sensitive" books were so "sensitive" that they should not be in ESD libraries at all. The ESD Board decided to ban these books from ESD libraries.

20.    The list of banned books, like the list of "sensitive" books, overwhelmingly contained books that were written by Black and LGBTQIA+ authors, or discussed race-related and LGBTQIA+ topics, characters, and experiences. The Book Ban was inherently discriminatory, and

it was the ESD Board's goal in implementing the ban to suppress voices by Black and LGBTQIA+ authors and content that discussed race-related and LGBTQIA+ topics, characters, and experiences.

21.     On August 13, 2024, early in the morning, teachers and staff at Elizabeth Middle School, including Ms. Condry, saw a story on Denver7 news about the ESD Board banning nineteen books, including books from Black authors and books that spoke to the experiences of LGBTQIA+ individuals. Included in the news report was the list of books that ESD had banned.

22.     Around that same time, ESD was also targeting classroom libraries, including those at Elizabeth Middle School. ESD demanded that all teachers who had classroom libraries remove specific books on the banned list and additional books that were not on the banned list, including books focused on the treatment of slaves, historical accounts of slavery, and references to same-sex feelings of attraction. This was the first time that Ms. Condry and her colleagues had heard of the Book Ban. Teachers and staff were very upset about this. Ms. Condry felt as through the Book Ban was trying to erase her and her students' cultural heritages.

**Ms. Condry spoke out about the Book Ban.**

23.     In mid-August, the ESD Board decided to put the Book Ban on hold with the articulated goal of getting feedback from the community about the removal of books, including "solution focused" feedback from ESD teachers. Eventually, the "solution focused" feedback was opened up to all ESD faculty and administration for comment.

24.     Ms. Condry wrote to the ESD Board as a Black woman who worked in ESD and shared her opinions about the Book Ban being unethical and racist. Ms. Condry also spoke out critically to Lead Counselor Connie Hines, Social Worker Michelle Shewmake, and Assistant Principal Jared Lewis about the Book Ban. Ms. Condry was passionate, but professional, when

protesting the racism of the Book Ban to both ESD Board and other individuals within ESD who were outside of her chain of command.

25.    On August 21, 2024, ESD held a Back to School BBQ. As a Black woman, because of the Book Ban, Ms. Condry did not feel comfortable attending the BBQ. Ms. Condry told Assistant Principal Jared Lewis, who is a Black man, and Principal Kimberly Runyan that she was not comfortable attending the BBQ as a Black woman because of the Book Ban. Assistant Principal Lewis understood Ms. Condry's discomfort, but Principal Runyan dismissed Ms. Condry's concerns.

### ESD terminated Ms. Condry because she is a Black woman who spoke out against the discriminatory Book Ban.

26.    On August 26, 2024, the ESD Board read Ms. Condry's criticism of the Book Ban.

27.    The very next day, on August 27, 2024, ESD Superintendent Dan Snowberger sent out an email to Ms. Condry and all of the other employees of ESD. In that email he stated that "[s]adly, some staff members did seem to misunderstand the request [for feedback] and somehow felt the request was an opening for harsh feedback to the Board on their decision" to implement the Book Ban. Superintendent Snowberger specifically called out Ms. Condry's feedback by stating that the feedback that called the actions of the Board "racist" "crossed the lines of professional and ethical behavior." Specifically, Superintendent Snowberger stated that this feedback would lead to "further disciplinary action[.]" Superintendent Snowberger made it clear that Ms. Condry worked "at the pleasure" of ESD Board. It was clear to Ms. Condry that ESD would retaliate against her for speaking out against the Book Ban and raising concerns about racism within ESD.

28.    Over the next month, Ms. Condry did the hard work of serving as the Academic Advisor at Elizabeth Middle School with excellence and integrity, despite being subjected to

racism on a daily basis at ESD. Ms. Condry stepped in to prevent racism from occurring within Elizabeth Middle School. This was a challenge, as Ms. Condry regularly heard students use racial epithets, such as "nigger" to refer to Black students and "beano" to refer to Hispanic students. Ms. Condry witnessed, and intervened to stop, Hispanic students from being told to "go back where they came from" by White students. Ms. Condry consistently brought the spoken racial epithets and conflicts that occurred among the students to the attention of her supervisors.

29.    On October 1, 2024, Ms. Condry was asked by Principal Runyan to come to her office so that Superintendent Snowberger could have a conversation with her. When Ms. Condry walked into Principal Runyan's office, Superintendent Snowberger was there, along with Defendant John Rogerson. Superintendent Snowberger told Ms. Condry that she was being terminated and referenced budgetary reasons as an excuse. It was clear to Ms. Condry, however, that she was being terminated because she was a Black woman who dared to speak up and call the Board racist for their decision to implement the Book Ban and for continually raising concerns about racism within ESD.

30.    Defendants Snowberger and Rogerson participated in ESD's decision to terminate Ms. Condry.

31.    Defendants Snowberger and Rogerson are final policymakers for ESD, and the ESD Board approved Ms. Condry's termination.

32.    Ms. Condry was terminated because she was a Black woman who dared to speak out against the discriminatory Book Ban.

**ESD breached its contract with Ms. Condry.**

33.    Ms. Condry and ESD entered into a contract when she accepted the position at ESD.

34.    The contract entered into between Ms. Condry and ESD stated that Ms. Condry was

to be employed by ESD from July 1, 2024, through June 30, 2025, and paid $65,000 in twelve equal installments. During this period, Ms. Condry was to perform her duties at ESD faithfully and satisfactorily.

35.     Ms. Condry performed all of her duties under the contract entered into between her and ESD faithfully and satisfactorily. ESD breached this contract when it terminated Ms. Condry.

**ESD replaced Ms. Condry with a White woman who supports the Book Ban.**

36.     After ESD terminated Ms. Condry, it hired Melissa Papulias in November of 2024 with the intent that Ms. Papulias would replace Ms. Condry. Ms. Papulias is a White woman who had no prior experience as a Dean of Students or Academic Advisor. ESD official promoted Ms. Papulias to the same role as Ms. Condry, Dean of Students/Academic Advisor in July of 2025 after her unofficially performing the role since ESD hired her to replace Ms. Condry in November of 2024.

37.     Prior to being hired at ESD, Ms. Papulias was the Chief of Staff for an organization called Able Shepherd, a controversial tactical security training organization. The Arapahoe County Sheriff's Office and Arapahoe Community College cut ties with Able Shepherd in 2023 after Able Shepherd planned a disruption of Castle Rock PrideFest (a celebratory event recognizing the LGBTQIA+ community). During the planned disruption, Able Shepherd employees (including Ms. Papulias), members of the white nationalist organization Patriot Front, and members of the Rocky Mountain Active Club (a reported neo-Nazi organization) blocked the stage wearing shirts stating, "Stand to Protect Children" and delayed PrideFest by approximately thirty minutes. Able Shepherd was later shown through email correspondence to have coordinated the disruption despite Ms. Papulias issuing a public statement that falsely denied Able Shepherd's involvement.

38.     The fact that ESD hired Ms. Papulias into the same role that had been occupied by

Ms. Condry demonstrates the falsity of its asserted budgetary reasons as a legitimate justification for having fired Ms. Condry.

39.    It was made even more apparent that Superintendent Snowberger's fabricated excuse of budgetary reasons for Ms. Condry's termination was not the true reason when ESD posted a job for an additional administrative position, Board Certified Behavior Analyst, shortly after ESD terminated Ms. Condry. The duties of the position were primarily to address behaviors that which were similar to the behaviors addressed by the Dean of Students and Academic Advisor position Ms. Condry had held at Elizabeth Middle School. The job posting also listed a salary that was between $15,000 and $20,000 higher than the salary Ms. Condry's prior position.

**Defendant Snowberger admitted on Facebook that ESD was not facing financial difficulties when it fired Ms. Condry.**

40.    In December of 2024, Defendant Snowberger responded to Facebook posts by a local community member concerned about the financial health of ESD after it took a $3,000,000 loan from the Colorado State Treasury. In response to this post, Defendant Snowberger stated that it was normal for ESD to take advantage of this type of loan.

41.    Further, Defendant Snowberger admitted that, in fact, due to the financial health of ESD, the loan was being applied for later in the 2024 cycle than it had been in previous years. In previous years, ESD had needed to take advantage of the loan program in November, but in 2024 it was not applying for the loan until the end of December with the plan to receive the loan in January. These admissions by Defendant Snowberger demonstrate the falsity of the budgetary justifications he advanced for Ms. Condry's termination.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 2000e, *et seq*. — Title VII**
**Discrimination Based on Sex, Race, and/or Sex-Plus-Race**

*Against Defendant ESD*

42.    Plaintiff incorporates all other paragraphs of this Complaint as if set forth herein.

43.    As a Black woman, Plaintiff is a member of protected classes under Title VII.

44.    At all relevant times, Plaintiff performed the functions of her job satisfactorily and was qualified for her position.

45.    Defendant ESD subjected Plaintiff to adverse treatment in the terms and conditions of her employment because of her race, sex, and/or sex-plus-race.

46.    Defendant ESD treated Plaintiff less favorably than her similarly situated white and/or male counterparts by terminating her employment and treating her worse because of her race, sex, and/or sex-plus-race where such actions were not taken against similarly situated white and/or male employees.

47.    Defendant ESD intended to discriminate against Plaintiff because of her race, sex, and/or sex-plus-race in taking adverse employment actions against her.

48.    Plaintiff's race, sex, and/or sex-plus-race were motivating factors in Defendant ESD taking adverse employment actions against Plaintiff, and Defendant ESD took such actions because of Plaintiffs' race, sex, and/or sex-plus-race.

49.    Defendant ESD's asserted reasons for taking adverse employment actions against Plaintiff are mere pretext for illegal discrimination and did not actually motivate those actions.

50.    Defendant ESD is liable for the acts and/or omissions of its agents and employees, including Defendants Snowberger and Rogerson.

51.    Defendant ESD, either directly or by and through its agents and employees, unlawfully discriminated against Plaintiff, which directly and proximately caused her damages.

52.    Plaintiff continues to be damaged by Defendant ESD's violation of her rights under

Title VII.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 2000e, *et seq.* — Title VII**
**Retaliation**
*Against Defendant ESD*

53.    Plaintiff incorporates all other paragraphs of this Complaint as if set forth herein.

54.    At all relevant times, Plaintiff was qualified to perform her job responsibilities and satisfactorily performed the duties of her positions.

55.    Plaintiff believed in good faith that Defendant ESD discriminated against her on the basis of her race, sex, and/or sex-plus-race.

56.    Plaintiff opposed activities prohibited by Title VII by, among other things, objecting to, and reporting, discrimination against both her and students of color.

57.    As a direct result of Plaintiff's protected opposition to activities prohibited by Title VII, Defendant ESD subjected her to actions which a reasonable employee would have found materially adverse, including but not limited to terminating her employment and treating her worse because of her opposition to discrimination based on race, sex, and/or sex-plus-race where such actions were not taken against similarly situated white and/or male employees and/or employees who did not voice such opposition.

58.    Defendant ESD's retaliation against Plaintiff arose out of, was caused by, and was like and related to the discrimination she opposed.

59.    Defendant ESD's asserted reasons for taking adverse actions against Plaintiff were pretext for illegal retaliation and did not actually motivate those actions.

60.    Defendant ESD is liable for the acts and/or omissions of its agents and employees, including Defendants Snowberger and Rogerson.

61.    Defendant ESD, either directly or by and through its agents and employees,

unlawfully retaliated against Plaintiff, which directly and proximately caused her damages.

62.     Plaintiff continues to be damaged by Defendant ESD's violation of her rights under Title VII.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 2000e, et seq. — Title VI**
**Retaliation**
**Against Defendant ESD**

63.     Plaintiff incorporates all other paragraphs of this Complaint as if set forth herein.

64.     Title VI provides that no person, on the grounds of race, color, or national origin, shall be excluded from participation, be denied the benefits of, or subjected to discrimination under any program or activity receiving federal financial assistance. Courts have uniformly held that there is a private right of action for Title VI retaliation.

65.     Defendant ESD received federal financial assistance.

66.     Plaintiff opposed activities prohibited by Title VI by, among other things, objecting to, and reporting, discrimination, including raising concerns that the Book Ban constituted unlawful discrimination.

67.     Plaintiff was subjected to adverse treatment that would dissuade a reasonable person from engaging in Title VI-protected activity.

68.     There was a causal connection between the Title VI-protected activity and the adverse treatment.

69.     Defendant's actions caused, directly and proximately, Plaintiff to suffer damages.

70.     Plaintiff continues to be damaged by Defendant ESD's violation of her rights under Title VI.

**FOURTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 — Section 1981**
**Race Discrimination**

*Against All Defendants*

71.    Plaintiff incorporates all other paragraphs of this Complaint as if set forth herein.

72.    Plaintiff is Black, and thus a member of a protected class under Section 1981.

73.    At all relevant times, Plaintiff performed the functions of her job satisfactorily and was qualified for her position.

74.    Plaintiff's employment relationship with ESD encompassed sufficient contractual rights to support a Section 1981 claim for race discrimination.

75.    Defendants denied Plaintiff the protections against race discrimination provided by Section 1981 in the terms and conditions of her employment by denying her the same benefits, privileges, and terms and conditions of her contractual employment relationship that her white counterparts enjoyed by, including but not limited to, by terminating her employment and treating her worse because of her race where such actions were not taken against similarly situated white employees.

76.    Plaintiff's race was a but-for cause of Defendants' adverse action.

77.    Defendants' discriminatory treatment against Plaintiff directly and proximately caused her damages.

78.    Plaintiff continues to be damaged by Defendants' violations of her rights under Section 1981.

## FIFTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 — Section 1981
### Retaliation
*Against All Defendants*

79.    Plaintiff incorporates all other paragraphs of this Complaint as if set forth herein.

80.    Plaintiff believed in good faith that Defendants discriminated against her on the basis of her race. Plaintiff also believed in good faith that Defendants discriminated against

students based on their race.

81.    Plaintiff opposed activities prohibited by Section 1981 by, among other things, objecting to and reporting discrimination against both her and others.

82.    As a direct result of Plaintiff's protected opposition to activities prohibited by Section 1981, Defendants subjected her to actions which a reasonable employee would have found materially adverse, including but not limited to terminating her employment and treating her worse because of her opposition to discrimination based on race where such actions were not taken against similarly situated white employees and/or employees who did not voice such opposition.

83.    Defendants' retaliation against Plaintiff arose out of, was caused by, and was like and related to the race discrimination she opposed.

84.    Defendants treated Plaintiff more adversely than her similarly situated counterparts who did not voice their opposition to Defendants' discrimination against her and others.

85.    Defendants' asserted reasons for taking adverse actions against Plaintiff were pretext for illegal retaliation and did not actually motivate those actions.

86.    Defendants' retaliation against Plaintiff directly and proximately caused her damages.

87.    Plaintiff continues to be damaged by Defendants' violations of her rights under Section 1981.

## SIXTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 — Fourteenth Amendment
### Discrimination Based on Sex, Race, and/or Sex-Plus-Race
*Against All Defendants*

88.    Plaintiff incorporates all other paragraphs of this Complaint as if set forth herein.

89.    Plaintiff is a Black woman.

90.    Defendants were acting under color of state law in their actions and inactions at all

relevant times.

91.    At the time of the complained of events, Plaintiff had the clearly established constitutional right to be free from discrimination based on race, sex, and/or sex-plus-race, and to enjoy the equal protection of the laws.

92.    Plaintiff's race, sex, and/or sex-plus-race were motivating factors in Defendants' decisions to discriminate and retaliate.

93.    Defendants acted with the intent or purpose of depriving Plaintiff of the equal protection and benefits of the law, and equal privileges and immunities under the law, in violation of the Fourteenth Amendment.

94.    Specifically, Defendants terminated Plaintiff's employment and treated her worse because of her race, sex, and/or sex-plus-race. Such actions were not taken against similarly situated white and/or male employees.

95.    Defendants had no rational basis for their discriminatory and retaliatory actions, let alone a purpose narrowly tailored to serve a compelling governmental interest in discriminating and retaliating against Plaintiff on the basis of her race, sex, and/or sex-plus-race.

96.    Defendants engaged in these actions or inactions intentionally, willfully, maliciously, and wantonly, showing deliberate indifference to and reckless disregard of Plaintiff's federally protected constitutional rights.

97.    Defendants' actions were objectively unreasonable considering the facts and circumstances confronting them.

98.    Defendants' actions against Plaintiff directly and proximately caused her damages.

99.    Plaintiff continues to be damaged by Defendants' violations of her rights under the Fourteenth Amendment of the United States Constitution.

## SEVENTH CLAIM FOR RELIEF
## 42 U.S.C. § 1983 — First Amendment
## Freedom Of Speech
### *Against All Defendants*

100.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

101.    Defendants acted under color of state law and within the course and scope of their employment at all times relevant to the allegations in this Complaint.

102.    Defendants are "persons" under 42 U.S.C. § 1983.

103.    Plaintiff was engaged in First Amendment-protected expression on a matter of public concern by speaking out against the Book Ban.

104.    Plaintiff's speech was not made pursuant to her official duties.

105.    Plaintiff's speech was not disruptive and Defendant ESD's interests did not outweigh Plaintiff's free speech interests.

106.    Defendants would not have terminated Plaintiff if she had not engaged in First Amendment-protected conduct.

107.    Defendants' termination of Plaintiff was substantially motivated by her First Amendment protected activity.

108.    Defendants' actions can be expected to chill a reasonable person from engaging in activity protected by the First Amendment.

109.    Defendants, collectively, failed to intervene to prevent every other Defendant from violating Plaintiff's constitutional rights.

110.    At the time when Defendants retaliated against Plaintiff for speaking out, Plaintiff had a clearly established constitutional right under the First Amendment to the United States Constitution to engage in the above-described activity.

16

111.    Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

112.    Defendants' actions against Plaintiff directly and proximately caused her damages.

113.    Plaintiff continues to be damaged by Defendants' violations of her rights under the First Amendment of the United States Constitution.

## EIGHTH CLAIM FOR RELIEF
### C.R.S. § 24-34-401, *et seq*. — CADA
### Discrimination Based on Sex, Race, and/or Sex-Plus-Race
*Against Defendants ESD and Snowberger*

114.    Plaintiff incorporates all other paragraphs of this Complaint as if set forth herein.

115.    As a Black woman, Plaintiff is a member of multiple protected classes under the CADA.

116.    At all relevant times, Plaintiff performed the functions of her job satisfactorily and was qualified for her positions.

117.    Defendants subjected Plaintiff to adverse treatment in the terms and conditions of her employment because of her race, sex, and/or sex-plus-race.

118.    Defendants treated Plaintiff less favorably than her similarly situated white and/or male counterparts by terminating her employment and treating her worse because of her race, sex, and/or sex-plus-race where such actions were not taken against similarly situated white and/or male employees.

119.    Defendants intended to discriminate against Plaintiff because of her race, sex, and/or sex-plus-race in taking adverse employment actions against her.

120.    Defendants permitted, tolerated, and ratified remarks made by Plaintiff's colleagues and supervisors that reflected a discriminatory animus.

121.    Plaintiff's race, sex, and/or sex-plus-race were motivating factors in Defendants

taking adverse employment actions against Plaintiff, and Defendants took such actions because of Plaintiff's race, sex, and/or sex-plus-race.

122.    Defendants' asserted reasons for taking adverse employment actions against Plaintiff were mere pretext for illegal discrimination and did not actually motivate such actions.

123.    Defendant Snowberger aided, abetted, incited, compelled, or coerced the doing of the discriminatory acts and unfair employment practices with respect to Plaintiff.

124.    Defendant ESD is liable for the acts and/or omissions of its agents and employees, including Defendants Snowberger and Rogerson.

125.    Defendant ESD, either directly or by and through its agents and employees, discriminated against Plaintiff on the basis of her race, sex, and/or sex-plus-race.

126.    Defendants' actions against Plaintiff directly and proximately caused her damages.

127.    Plaintiff continues to be damaged by Defendants' violations of her rights under the CADA.

**NINTH CLAIM FOR RELIEF**
**C.R.S. § 24-34-401,** *et seq.* **— CADA**
**Retaliation**
*Against Defendants ESD and Snowberger*

128.    Plaintiff incorporates all other paragraphs of this Complaint as if set forth herein.

129.    At all relevant times, Plaintiff performed the functions of her job satisfactorily and was qualified for her positions.

130.    Plaintiff believed, in good faith, that Defendants had discriminated against her and others on the basis of her race, sex, and/or race-plus-sex, as described herein.

131.    Plaintiff engaged in protected activity by opposing that discrimination.

132.    As a direct result of Plaintiff's protected opposition to activities prohibited by CADA, Defendants subjected her to actions which a reasonable employee would have found

materially adverse, including but not limited to terminating her employment and treating her worse because of her good faith opposition to discrimination based on race, sex, and/or sex-plus-race where such actions were not taken against similarly situated white and/or male employees and/or employees who did not express such opposition to discrimination, among other materially adverse actions.

133.    Defendants' retaliation against Plaintiff arose out of, was caused by, and was like and related to the discrimination she opposed.

134.    Defendant treated Plaintiff more adversely than her similarly situated counterparts who did not speak out.

135.    Defendants' asserted reasons for taking adverse actions against Plaintiff were pretext for illegal retaliation and did not actually motivate those actions.

136.    Defendant is liable for the acts and omissions of its agents and employees, including Defendants Snowberger and Rogerson.

137.    Defendants' actions against Plaintiff directly and proximately caused her damages.

138.    Plaintiff continues to be damaged by Defendants' violations of her rights under the CADA.

**TENTH CLAIM FOR RELIEF**[2]
**Wrongful Discharge in Violation of Public Policy**
*Against Defendants Snowberger and Rogerson*

139.    Plaintiff incorporates all other paragraphs of this Complaint as if set forth herein.

140.    Plaintiff articulated concerns about matters of public concern and official misconduct by speaking out against the Book Ban.

---

[2] Plaintiff brings this claim in good faith for the express purpose of extending and/or modifying existing precedent.

141.    Plaintiff's speech was not made pursuant to her official duties.

142.    Plaintiff's speech was not disruptive and Defendant ESD's interests did not outweigh Plaintiff's free speech interests.

143.    Defendant's termination of Plaintiff was because she articulated concern about matters of public concern and official misconduct.

144.    Terminating an employee because she articulated concern about matters of public concern and official misconduct is against public policy.

145.    Defendant would not have terminated Plaintiff if she had not engaged in articulated concerns about matters of public concern and official misconduct by speaking out against the Book Ban.

146.    Defendant's actions were willful and wanton.

147.    Defendant's actions against Plaintiff directly and proximately caused her damages.

148.    Plaintiff continues to be damaged by Defendant's violations of her rights.

149.    Defendant's actions against Plaintiff directly and proximately caused her damages.

150.    Plaintiff continues to be damaged by Defendant's wrongful termination of her in violation of public policy.

## ELEVENTH CLAIM FOR RELIEF
## 42 U.S.C. § 1983 — Fourteenth Amendment
## Due Process
### *Against All Defendants*

151.    Plaintiff incorporates all other paragraphs of this Complaint as if set forth herein.

152.    A valid employment contract existed between Plaintiff and Defendant ESD providing Plaintiff with a property interest in her employment.

153.    The contract provided that Plaintiff's employment would continue for at least a year.

154.    Plaintiff substantially performed her duties under the contract.

155.    Defendants failed to perform their duties under the contract by terminating Plaintiff before the end of the contractual term.

156.    Defendants failed to provide Plaintiff with due process of law prior to terminating her employment.

157.    At the time when Defendants terminated Plaintiff, Plaintiff had a clearly established constitutional right under the Fourteenth Amendment to the United States Constitution to due process of law.

158.    Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

159.    Defendants' actions against Plaintiff directly and proximately caused her damages.

160.    Plaintiff continues to be damaged by Defendants' actions.

## TWELFTH CLAIM FOR RELIEF
### Breach of Contract
*Against Defendant ESD*

161.    Plaintiff incorporates all other paragraphs of this Complaint as if set forth herein.

162.    A valid employment contract existed between Plaintiff and Defendant.

163.    The contract provided that Plaintiff's employment would continue for at least a year.

164.    Plaintiff substantially performed her duties under the contract.

165.    Defendant failed to perform its duties under the contract by terminating Plaintiff before the end of the contractual term.

166.    Defendant's actions against Plaintiff directly and proximately caused her damages.

167.    Plaintiff continues to be damaged by Defendant's actions.

## THIRTEENTH CLAIM FOR RELIEF[3]
## C.R.S. § 8-2-104 – Inducement By Misrepresentation
*Against Defendants Snowberger and Rogerson*

168.    Plaintiff incorporates all other paragraphs of this Complaint as if set forth herein.

169.    Defendants induced Plaintiff to relocate to Colorado on the promise of employment with the ESD.

170.    Defendants induced Plaintiff to relocate to Colorado through false and deceptive representations about her employment with ESD.

171.    Defendants knew their statements about Plaintiff's work at ESD were false or, at the very least, was reckless about their truthfulness.

172.    Defendants' actions were willful and wanton.

173.    Defendants' actions against Plaintiff directly and proximately caused her damages.

174.    Plaintiff continues to be damaged by Defendants' actions.

## FOURTEENTH CLAIM FOR RELIEF[4]
## Fraudulent Inducement
*Against Defendants Snowberger and Rogerson*

175.    Plaintiff incorporates all other paragraphs of this Complaint as if set forth herein.

176.    Defendants Snowberger and Rogerson fraudulently induced Plaintiff to move to

---

[3] Plaintiff brings this claim in good faith for the express purpose of extending and/or modifying existing precedent. Plaintiff brings this claim in good faith for the express purpose of extending and/or modifying existing precedent. This claim is plead in the alternative based on Defendants' articulated justification of budgetary reasons for Plaintiff's termination, which if true should have been disclosed prior to her hiring. Plaintiff does not concede that there were budgetary reasons for her termination.

[4] Plaintiff brings this claim in good faith for the express purpose of extending and/or modifying existing precedent. Plaintiff brings this claim in good faith for the express purpose of extending and/or modifying existing precedent. This claim is plead in the alternative based on Defendants' articulated justification of budgetary reasons for Plaintiff's termination, which if true should have been disclosed prior to her hiring. Plaintiff does not concede that there were budgetary reasons for her termination.

Colorado knowing that ESD would terminate her for alleged budgetary reasons.

177.    The fact of ESD's alleged budgetary issues was material.

178.    Defendants Snowberger and Rogerson concealed the alleged budgetary issues for the purpose of inducing Plaintiff to accept employment with ESD and move to Colorado.

179.    Plaintiff accepted the job with ESD based on Defendants Snowberger's and Rogerson's representations that she would be employed for at least a year with ESD.

180.    Defendants Snowberger's and Rogerson's actions were willful and wanton.

181.    Defendants Snowberger's and Rogerson's actions against Plaintiff directly and proximately caused her damages.

182.    Plaintiff continues to be damaged by Defendants Snowberger's and Rogerson's actions.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and award her all relief as allowed by law, including, but not limited to the following:

a.  Declaratory relief and injunctive relief, as appropriate;

b.  Actual economic damages as established at trial;

c.  Compensatory damages;

d.  Non-economic damages;

e.  Punitive damages in an amount to be determined at trial;

f.  Issuance of an Order mandating appropriate equitable relief, including but not limited to:

    i.  Issuance of a formal written apology;

      ii.   The imposition of mandatory training within ESD;

g.  Pre-judgment and post-judgment interest at the highest lawful rate;

h.  Attorney's fees and costs; and

i.  Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated this 30th day of November 2025

NEWMAN | MCNULTY, LLC

*s/ Andy McNulty*
Mari Newman
Andy McNulty
Madeline Leibin
1490 N. Lafayette Street Suite 304
Denver, CO 80218
(720) 850 - 5770
mari@newman-mcnulty.com
andy@newman-mcnulty.com
madeline@newman-mcnulty.com

ATTORNEYS FOR PLAINTIFF